## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

ANDREA ELLIS, individually and
on behalf of all others similarly
situated,

     Plaintiff,

v.

STATE FARM MUTUAL
AUTOMOBILE COMPANY, an Illinois
corporation,

     Defendant.

_____/

CASE NO.: 6:22-cv-1005-RBD-DCI

<u>CLASS ACTION</u>

## <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

Plaintiff ANDREA ELLIS ("Plaintiff"), individually and on behalf of all
others similarly situated, hereby files this Amended Class Action Complaint
against Defendant State Farm Mutual Automobile Company ("State Farm" or
"Defendant"), and alleges:

## <u>NATURE OF THE ACTION</u>

1.    This is a class action lawsuit brought by Plaintiff, a named insured
under an automobile policy issued by State Farm for business auto physical
damage, including comprehensive and collision coverage (the "Policy"), under
which Defendant is required to pay the "Actual Cash Value" ("ACV") of an insured
vehicle in the event it is declared a "total loss". Defendant and its vendors possess

data demonstrating that vehicles on average are sold for the amount they are listed, meaning there is not a negotiation down from the listed price. Incredibly, and unconscionably, State Farm (through its vendor) simply **tosses** the data then represents to its insureds that the opposition is true, i.e., that there is an average difference of approximately 8% between list price and sold price—this is false, and State Farm knows (or should know) that it is false—which is supposedly attributable to negotiation.[1]

2.      State Farm is a private insurance company that transacts insurance in the State of Florida. Among other coverages, Defendant offers comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid amounts owed not just to Plaintiff, but to thousands of other insureds, all of whom are putative members of the Class (as fully defined below), in payment for total loss vehicles insured with comprehensive and collision coverage.

3.      This lawsuit is brought by Plaintiff, individually and on behalf and all other similarly situated insureds, against State Farm for damages suffered as a result of Defendant's failure to make properly pay the true market cash value to first-party insureds who suffered a total loss of their insured vehicles.

4.      Insureds, such as Plaintiff and the putative Class Members, pay a premium in exchange for State Farm's promise to repair any damage to an insured vehicle caused by a covered peril. However, State Farm's obligation to repair any

---

[1] Upon information and believe, State Farm recently switched the vendor it uses to value totaled vehicles and, thus, no longer applies a "typical negotiation" adjustment.

damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle – for example, State Farm is not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under such circumstances, where the cost to repair the damage exceeds the value of the vehicle (less retained value), the vehicle is considered a "total loss." If a "total loss" occurs, State Farm's contractual obligation is limited to paying ACV.

5.    The goal of ACV in insurance contracts is that of indemnity. By promising to pay the cost to repair the vehicle limited at ACV in the event of a total loss, Defendant promises to put its insureds back to their pre-loss position.

6.    In Florida, the insurer must either physically replace the total loss vehicle with another vehicle (including of course paying concomitant sales tax and replacement fees) or the insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle.  *See* § 626.9743, Fla. Stat.

7.    State Farm chose to not replace or repair Plaintiff's vehicle but rather chose to pay a cash settlement for what it represented to be the actual cost to purchase a comparable automobile or ACV.

8.    When determining the ACV of a total loss vehicle, it is improper for an automobile insurance company, such as State Farm, to undervalue and underpay the claims by manipulating the data used to value the vehicles.

9.    Notwithstanding its contractual obligations, State Farm systemically fails to pay its insureds the ACV of their total-loss vehicles by applying an improper and unreasonable Typical Negotiation Adjustments ("Negotiation Reduction") to

3

the value of the vehicle. This reduction is contrary to appraisal standards and methodologies, is not based in fact, is contrary to the used-car industry's pricing and inventory management practices, and is applied by Defendant solely as a basis to reduce the amount owed to its insureds after a total loss and increase Defendant's profits.

10.    The across-the-board Negotiation Reduction does not reflect market realities. Indeed, Defendant applies the "Typical Negotiation" adjustment without contacting the identified dealerships or sellers or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based "Typical Negotiation Adjustment" reduction, Defendant ignored that it has for decades been the practice of used car dealers to price vehicles to market and not deviate from that advertised cash price. It simply is not the case—and has not been for well over 10-15 years—that used car dealers routinely price above market with the hopes of striking a great deal with some terrible negotiating consumer but with the expectation of probably having to negotiate down from that price. That is simply not how the market works anymore, given, amongst other things, the ubiquity of Internet advertising and shopping and the development of sophisticated pricing tools (for dealers) and comparison tools (for consumers). Indeed, particularly during the COVID-19 pandemic, and the related supply chain problems with parts such as electronics for vehicles, used cars have been selling for a premium, with sale price typically ***increasing*** from the posted price.

11.     Moreover, the Negotiation Reduction is arbitrary and not based on statistically valid calculations. Upon information and belief, Defendant manipulates the data by simply ignoring the vast number of data points where the sold price is equal to or greater than that vehicle's advertised price.

12.     The Negotiation Reduction was applied to the comparable vehicles evaluated by State Farm on top of adjustments for differences such as mileage, options, and equipment. The deduction is not specific as reasonably possible nor appropriate as to dollar amount, and no explanation is provided as to the evidentiary basis for the across-the-board reduction.

13.     This pattern and practice of deliberately undervaluing comparable and total-loss vehicles when paying first-party automobile total loss claims results in Defendant underpaying insureds for the ACV of their total-loss vehicles, in breach of the clear terms of its insurance policy.

14.     Plaintiff and the putative Class Members lived up to their end of the bargain by paying the premiums owed and abiding by all contractual requirements. Defendant did not. Rather, Defendant reduced the ACV value of total-loss vehicles through the use of the arbitrary and unsupported Negotiation Reduction.

15.     Defendant's standardized policy language as to coverage for the ACV of total-loss vehicles is present in every auto policy issued by Defendant in Florida and requires that it pay at least the based upon actual cost to purchase a comparable motor vehicle of every total loss insured vehicle.

16.    Defendant's failure to pay the full and complete ACV of insured vehicles on first-party claims constitutes a material breach of contract as to Plaintiff and every member of the putative Class defined herein.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a member of the putative class that consists of at least 100 members and she and the Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs, and (c) none of the exceptions under § 1332 apply to this claim.

21.    Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendant is subject to personal jurisdiction here.

## PARTIES

22.    At all times material hereto, Plaintiff was a citizen of the State of Florida and domiciled in Orange County, Florida.

23.    At all times material hereto, Defendant is and was a foreign corporation incorporated in, and with its principal place of business in Illinois, and is, therefore, a citizen of the state of Illinois.

24.    Plaintiff and members of the putative class are all insured under Florida policies issued by Defendant containing materially identical policy language.

6

## NATURE OF THE CASE

25.     Defendant is an automobile insurer in Florida and provides, *inter alia*, coverage for first-party property damage under collision and/or comprehensive coverage. Such policies, issued to Plaintiff and all putative Class Members, are form policies that promise to pay for the loss up to a limit on the liability of ACV.

26.     Most car accidents are "partial" losses, which is the term used where insurers (including Defendant) pay to repair the damage to a vehicle. Where repair of the vehicle is impossible or uneconomical, however, the loss is considered a "total loss." When Defendant determines that a vehicle is a total loss it elects to pay the vehicle's ACV.

27.     Pursuant to the basic tenets of insurance law, once Defendant elects to pay ACV, it is bound by that election and cannot thereafter change its mind and decide to later pay the cost to repair or replace the amount of loss. *See* 12A Couch on Ins. § 176.23. Put differently, when Defendant declares a vehicle a total loss and voluntarily invokes its limitation of liability, it is obligated under its insurance policy to pay the ACV of the vehicle to the insured.

28.     Total loss scenarios are taxing. Not only has the insured likely suffered more than a minor accident – and thus are often dealing with potential medical injuries – there are numerous insurance-related issues, such as payment for storage, investigation of the vehicle and claim, finding a replacement vehicle, and so forth.

7

29.    Florida law, to minimize the uncertainty surrounding total-loss situations, prescribed certain regulatory requirements that all insurers must follow when reimbursing insureds after their vehicle is determined a total loss.

30.    Specifically, § 626.9743, Fla. Stat. governs the adjustment and claim payment for total-loss vehicles, *i.e.*, where insurers decline to repair or replace a vehicle and choose to instead base its payment on the vehicle's actual cash value. in such situations, the statute requires "The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle...." *Id.* "Such cost may be derived from:

> 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days;
>
> 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as:
>
>> a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or
>>
>> b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or

8

3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." § 626.9743, Fla. Stat.

31.    Defendant, however, fails entirely to abide by such requirements, and, in so doing, fails to pay its insureds the ACV of their vehicles.

32.    Defendant purports to calculate the ACV of total-loss vehicles via a third-party vendor through a system called "AudaExplore" which provides what it calls an "Autosource Market-Driven Valuation".

33.    Ostensibly, the AudaExplore system identifies the list price of comparable vehicles, which it then adjusts based on factors such as differences in equipment, packages, and/or condition between the comparable vehicle and the total-loss vehicle. This is a legitimate and proper method for calculating the market value of a vehicle, and Plaintiff does not contest any of these elements of Defendant's methodology. Indeed, this method accurately identifies the market value of totaled vehicles.

34.    However, Defendant does not stop there: In violation of Florida law and the Policy obligation to pay ACV, Defendant applies unfounded, false, and capricious Negotiation Reductions.

35.    Defendant represents that the Negotiation Reduction reflects some sort of average difference between the list price and "what the dealer would be willing" to sell it for. But Defendant does not actually base the Negotiation Reduction on conversations with the sellers of the comparable vehicles or even

statistically valid data or calculations. Indeed, the reduction applied to Plaintiff's vehicle is not supported by a comparison of the list versus sold vehicle prices within the State of Florida. Upon information and belief, Defendant's Negotiation Reduction is arbitrary, conflicts with the very data on which it is purportedly based, and is nothing more than an illegitimate and capricious way to undervalue the total-loss vehicles.

36.    Upon information and belief, Defendant instructs AudaExplore to apply the Negotiation Reduction in some states but not others. Other insurers who use the AudaExplore system do not instruct AudaExplore to apply the Negotiation Reduction to the price of comparable vehicles.

37.    Defendant and its vendors possess millions and millions of transactional data showing the listed price and sold price of each vehicle. Defendant, through Audatex, represents that the "Negotiation Reduction" is based on the average difference between listed price and sold price for vehicles within given price points.

38.    This is false. Upon information and belief, the data transactions shows there is, on average, essentially no difference between list price and sold price. Defendant and its vendors simply ignore or exclude all the data they don't like.

36.    Defendant's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Florida.

37.    At all times material hereto, Plaintiff owned a 2007 Dodge Caliber insured by a Policy issued by Defendant.

38.    On or about December 7, 2018, the insured vehicle was involved in an accident. As a result of the accident, Plaintiff filed a claim with Defendant for property damage.

39.    Subsequently, Defendant determined the cost to repair the vehicle exceeded the ACV of the vehicle, and thus declared the vehicle to be a "total" loss.

40.    Through a third-party vendor, Defendant determined that the vehicle had an "adjusted value" of $2,578.00. The adjusted vehicle value was based on the average of comparable vehicle prices, to which Defendant arbitrarily reduced through the Negotiation Reduction, resulting in an overall reduction to Plaintiff's vehicle value, and resulting in Defendant paying *less* than the ACV of Plaintiff's vehicle.

41.    Defendant's failure to pay the ACV of Plaintiff's vehicle is a breach of the Policy, which promises to pay the ACV of the total-loss vehicle.

42.    Plaintiff and all members of the putative Class paid all premiums owed under their respective insurance policies with State Farm and otherwise satisfied all conditions precedent, or such conditions precedent were waived or excused, prior to bringing this action against Defendant.

## **STATE FARM'S INSURANCE POLICY**

43.    Pursuant to its standard form policy language applicable (in relevant part) to all members of the putative Class, Defendant promises to pay for loss.

44.     In its Payment for Loss provision, Defendant promises to repair or replace the vehicle or to pay the cost to do so in money.

45.     When an insured vehicle suffers a loss, Defendant determines the amount it would cost to repair the damage (including, if necessary, replacement of component parts), including, *inter alia*, applicable labor rates, cost of materials, paint, etc. This amount constitutes the amount of "loss" Defendant is obligated to pay its insureds.

46.     However, Defendant's liability for that amount of loss is not limitless. Where such amount exceeds the pre-loss ACV of the insured vehicle, Defendant is not liable for the full amount of loss; instead, its liability is limited to the lesser amount of ACV. This scenario – where the repair cost (plus salvage value) exceeds the vehicle's ACV – is known in the insurance industry as a "total loss".

47.     By determining that Plaintiff's and class members' vehicles were a "total loss", Defendant determined the cost to repair the respective vehicles exceeded their ACV.

48.     Thus, the applicable obligation pursuant to the Policy is that Defendant will pay the ACV of the insured vehicle in the event it is determined by Defendant to be a total loss.

## CLASS REPRESENTATION ALLEGATIONS

50.     Plaintiff brings this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

51.    Plaintiff brings this action as a class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All Florida State Farm insureds, from the earliest allowable time through the date of resolution of this action, who received a first-party total-loss valuation and payment on an automobile total-loss claim that included a "Typical Negotiation Adjustment" or similar Negotiation Reduction.

52.    The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

53.    **Numerosity**: Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, upon information and belief, including an investigation by the undersigned and examination of the premiums written by Defendant over the past five years, Plaintiff believes that the number of members of the Class numbers in the thousands, such that members of the Class are so numerous that joinder of all such claims is impracticable and numerosity as to the Classes is otherwise established within the meaning of Rule 1.220(a)(1).

54.    **Commonality**: Rule 1.220(a)(2)'s commonality requirement for the Classes is satisfied because the central (and dispositive) issues in this litigation turn on the interpretation of materially identical policy provisions; thus, this case

13

is well-suited for class-wide adjudication. Defendant and all class members are bound by the same materially identical policy terms. Common questions include, but are not limited to, the following:

a. whether Defendant's application of a Typical Negotiation Adjustment complies with § 626.9743, Fla. Stat.;

b. whether Defendant's application of a Typical Negotiation Adjustment results in a breach of Defendant's contractual obligation to pay ACV;

c. whether Defendant's application of a Typical Negotiation Adjustment is a breach of the covenant of good faith and fair dealing;

d. whether Plaintiff and Class members are entitled to damages and the measure of damages owed.

55. **Typicality**: Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiff and Class Members were injured by Defendant's uniform misconduct. Plaintiff's claims and the defenses thereto are typical of members of the Class. Defendant injured Plaintiff and members of the Class through uniform misconduct and Plaintiff's legal claims arise from the same core practices. Plaintiff suffered the same harm as all Class members and Plaintiff's interests are identical to those of the other Class Members. Thus, typicality within the meaning of Rule 23(a)(3) is established.

56. **Adequacy**: Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions, and Plaintiff has no interests in conflict with or

antagonistic towards those of putative Class Members. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses. For these and other reasons, Plaintiff and the undersigned Counsel are adequate within the meaning of Rule 23(a)(4).

57.    **Predominance**: The previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Resolution of the common issues in this litigation will resolve virtually the entirety of every Class Members' claims in a single stroke. There are no significant individual questions of liability or damages whatsoever, and certainly not ones that predominate over issues common to the Class. Thus, predominance within the meaning of Rule 23(b)(3) is established.

58.    **Superiority**: Class treatment is superior to any other viable alternative method of adjudication within the meaning of Rule 23(b)(3), in that:

a) Neither the size of the Classes nor any other factor, makes it likely that difficulties will be encountered in the management of this case as a class action;

b) The prosecution of separate actions by individual Class Members, or the individual joinders of all Class Members in this action, is impracticable and would create a significant and unnecessary burden on the resources of the courts and could result in inconsistent

adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

c)  Because of the disparity of resources available to Defendant versus those available to individual members of the Classes, prosecution of separate actions would work a financial hardship;

d)  The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class Member and meets all due process requirements. A class action is also superior to the maintenance of these claims on an individual basis when all actions arise out of the same circumstances and course of conduct; and

e)  Because the claims are relatively small compared to the cost, time, and expense of litigation, individual actions will be rendered financially impractical, if not impossible.

59.  Thus, class treatment is superior to any other possible form of adjudication within the meaning of Rule 23(b)(3).

60.  Plaintiff retained the undersigned counsel and agreed to pay reasonable attorney's fees and costs in connection with this action. Plaintiff, for himself and the putative Class, is entitled to recover attorney's fees pursuant to Section 627.428, Florida Statutes, and taxable costs pursuant to Section 57.041, Florida Statutes.

## COUNT I: BREACH OF CONTRACT

16

61.   The allegations in paragraphs 1 through 60 are hereby incorporated by reference.

62.   This count is brought by Plaintiff on behalf of herself and all members of the Class.

63.   Plaintiff and all members of the putative Class paid all premiums and otherwise satisfied all conditions precedent, as evidenced by, *inter alia*, the fact that Defendant determined the claims were covered claims.

64.   Plaintiff and all members of the Class made claims under their insurance contracts, which Defendant determined to be total losses. Defendant purported to pay Plaintiff and each Class member the ACV of their totaled vehicles.

65.   Defendant, however, failed to fully pay ACV because Defendant applied the arbitrary Negotiation Reduction to comparable vehicles, resulting in an across-the-board reduction in vehicle valuations, resulting in an underpayment of market value to Plaintiff and each Class member.

66.   Given the duties and obligations imposed by the terms and conditions of the form insurance contract, interpreted in light of and (if necessary) conformed to Florida law, Defendant's application of the Negotiation Reduction constituted a breach of Defendant's obligations under its insurance contracts.

67.   Plaintiff and putative members of the Class were damaged by Defendant's breaches of contract in amounts that will be demonstrated according to proof.

68.     Plaintiff and putative members of the Class are entitled to compensatory damages, penalties, costs, attorneys' fees, and all other relief allowable by law and/or that this Court deems just and proper.

## COUNT II: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

69.     The allegations in paragraphs 1 through 60 are hereby incorporated by reference.

70.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

71.     Defendant's application of an arbitrary and statistically invalid Negotiation Adjustment was made in bad faith for no purpose other than to minimize Defendant's payment obligations under its insurance contracts.

72.     To the extent Defendant possesses some level of discretion in calculating ACV, Defendant did not exercise that discretion in good faith by simply ignoring, excluding, or tossing all data showing transactions where the sold price equaled or exceeded the vehicle's list price.

73.     Defendant also did not exercise that discretion in good faith by assuming any difference between sold and list price is attributable to negotiation off the cash price, and not other reasons unrelated to true market price, such as,

for example, a loyalty discount or employee discount or friends/family discount, or because the purchaser agreed to finance the purchase through the dealership.

74.    Defendant's use of the appraisal clause is also not exercised in good faith. Appraisal costs consumers, on average, approximately $700.00-$1,000.00. The average "Negotiation Reduction" is also approximately $700.00-$800.00. State Farm knows it can impose the capricious and arbitrary reduction because the cost to recover those damages will normally be as high or higher than the damages itself.

75.    As a result, Plaintiff and members of the putative Valuation Class are entitled to compensatory damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks relief and judgment as follows:

1.   For an Order certifying this action as a Class Action on behalf of the Class described above;

2.   For an award of compensatory damages according to proof;

3.   For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. §627.428 and Fla. Stat. §57.041;

4.   For costs of suit incurred herein;

19

5. For prejudgment and postjudgment interest on any amounts awarded;

6. For other forms of relief as this Court deems just and proper;

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

Dated: August 26, 2022

Respectfully submitted:

*/s/ Amy Judkins*
AMY L. JUDKINS
Florida Bar No.: 125046
EDMUND A. NORMAND
Florida Bar No.: 865590
JACOB L. PHILLIPS
Florida Bar No.: 120130
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407-603-6031
amy.judkins@normandpllc.com
jacob.phillips@normandpllc.com
ed@ednormand.com
ean@normandpllc.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 26, 2022, a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system and was thus served automatically upon all counsel of record in this matter.

Johanna W. Clark [FBN 196400]
**CARLTON FIELDS, P.A.**
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone: (407) 849-0300
Fax: (407) 648-9099
Email: jclark@carltonfields.com


Daniel F. Diffley (pro hac vice application forthcoming)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: dan.diffley@alston.com

***Attorneys for Defendant State Farm***
***Mutual Automobile Insurance Company***